**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DAVID HARRINGTON,

                                        Plaintiff,

            - v -                                        Civ. No. 9:13-CV-0795
                                                                (BKS/DJS)
DR. VADLAMUDI, *et al.*,

                                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

DAVID HARRINGTON
Plaintiff, *Pro Se*
79 Lamplighter Acres
Fort Edward, New York 12828

HON. ERIC T. SCHNEIDERMAN                    KEITH J. STARLIN, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff David Harrington commenced this action, pursuant to 42 U.S.C. § 1983, the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and Section 504 of the

Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, against Defendants Dr.

Krishna Vadlamudi, Sandra Martin Smith, and Marcy Correctional Facility ("Marcy").  Dkt. No.

45, 2d Am. Compl.  Plaintiff asserts a claim for deliberate medical indifference in violation of the

Eighth Amendment against Defendant Dr. Vadlamudi, a claim for retaliation in violation of the First

Amendment against Defendant Smith, and claims for disability discrimination in violation of the

ADA and Rehabilitation Act against Defendant Marcy.  Presently before the Court is Defendants'

Motion for Summary Judgment.  Dkt. No. 57, Defs.' Mot. Summ. J.  Plaintiff has not filed a

response.  For the reasons that follow, the Court recommends that Defendants' Motion for Summary

Judgment be **granted**.

## I. BACKGROUND

### A. Plaintiff's Failure to Respond

Defendants filed their Motion for Summary Judgment on December 18, 2015, setting

Plaintiff's response deadline for January 19, 2016.  Defs.' Mot. Summ. J.  As required by the local

rules, Defendants advised Plaintiff of the consequences of failing to respond to the Summary

Judgment Motion.  *See id.*  Plaintiff, however, failed to file a response.  *See* Docket.

Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly

supported facts set forth in the Statement of Material Facts that the opposing party does not

specifically controvert." N.D.N.Y.L.R. 7.1(a)(3).  Although a *pro se* litigant is entitled to a liberal

construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro

se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see

Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995).  However, the Second Circuit, acknowledging a

court's broad discretion to determine whether to overlook a failure to comply with local rules, has

held that the court may in its discretion opt to conduct a review of the entire record even where one

of the parties has failed to file a 7.1 statement.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d

Cir. 2001).  Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary

judgment record to ascertain the undisputed material facts.  The Court will cite to the facts as set

forth in Defendants' Rule 7.1 Statement of Facts only when properly supported by the record.  Dkt.

No. 57-1, Defs.' Rule 7.1. Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

### B. Factual Background

The relevant events of this action occurred when Plaintiff was incarcerated at Marcy while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Defs.' SMF at ¶ 12. Plaintiff was transferred to Marcy on November 3, 2011, *id.*, and was released on parole on February 7, 2014, *see* DOCCS Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.ny.gov (Inmate David P. Harrington, DIN 01-A-4591) (last visited Aug. 8, 2016).

Plaintiff has a history of seizures, dating to childhood, and asserts that he suffers from epilepsy and is autistic. Dkt. No. 57-5, Keith J. Starlin Decl., dated Dec. 18, 2015, Ex. D, Pl.'s Dep., dated Apr. 4, 2014, ("Pl.'s Dep.") at pp. 10-12 & 86. Plaintiff has different types of seizures, including both petit mal and grand mal seizures.[1] *Id.* at p. 65; *see also* Starlin Decl., Ex. C,

---

[1] According to Plaintiff, petit mal seizures involve "episodes of staring with fluttering eye lids and sometime twitching facial muscles." 2d Am. Compl. at ¶ 61. A person suffering a petit mal seizure is "completely unaware of their surroundings." *Id.* These episodes may occur in succession or may last for several days. *Id.* Plaintiff describes a grand mal seizure as a seizure that "quickly spreads to both sides of the brain, causing the entire brain to malfunction." *Id.* at ¶ 64. Plaintiff claims that petit mal seizures can "build" into a grand mal seizure, and he will know beforehand when he will experience a grand mal seizure. Pl.'s Dep. at p. 61.

Ambulatory Health Record ("AHR") at p. 206.[2]  Plaintiff's seizures have been treated with several different medications, and since 2009, he has taken Topamax 200mg, twice daily.  AHR at p. 206. In the past, Plaintiff had taken Depakote and Keppra, but had serious side effects on both medications.  *Id.*  Plaintiff has continued to have seizures, even while on Topamax.  *Id.* at p. 43.

At Marcy, Defendant Dr. Vadlamudi was responsible for overseeing Plaintiff's medical care. Dkt. No. 57-9, Krishna Vadlamudi Decl., dated Dec. 17, 2015, at ¶ 4.  Currently, and during all relevant events of this action, Dr. Vadlamudi is employed by DOCCS as a physician and Facility Health Director at Marcy.  *Id.* at ¶ 1. On December 23, 2011, Plaintiff saw Dr. Vadlamudi for a five-year physical exam.  AHR at p. 142.  Plaintiff was noted to be "doing OK" and was instructed to continue with Topamax 200mg, twice daily.  *Id.*  Plaintiff's seizures were tracked at follow-up appointments and lab work was periodically run to monitor the levels and effects of Topamax. Vadlamudi Decl. at ¶ 8.  At appointments on February 8, June 3, and July 29, 2012, it was recorded that Plaintiff's last seizure had occurred in August 2011.  AHR at pp. 133, 135, & 138.

At an appointment on June 7, 2012, Dr. Vadlamudi noted that Plaintiff's seizures began at age 13 and he had a history of head trauma and occasional leg spasms.  AHR at p. 135.  Dr. Vadlamudi also recorded that a CAT scan had been taken of Plaintiff's head on September 10, 2011, and was negative, as were neurological results.  *Id.*  Plaintiff asserts that he informed Dr. Vadlamudi at this appointment that his medication was not working and that he was having petit seizures.  2d Am. Compl. at ¶ 10.  Plaintiff requested a referral to a neurologist.  *Id.* at ¶ 11.  Dr. Vadlamudi denied the request and instructed Plaintiff to continue on Topamax 200mg, twice daily.  *Id.* at ¶¶ 12-13; AHR at p. 135.

---

[2] The AHR was filed separately with the Court.  Dkt. No. 58.  Citations to the AHR are to the pagination assigned by Defendants.

On July 30, 2012, Plaintiff again alerted Dr. Vadlamudi to "the unusual number of seizures that [he] had been experiencing" and requested a referral to a neurologist. 2d Am. Compl. at ¶ 14. Dr. Vadlamudi recorded that Plaintiff's seizures were under control and instructed Plaintiff to continue with Topamax. *Id.* at ¶ 15; AHR at p. 133. On August 3, 2012, Plaintiff reported to Dr. Vadlamudi that he had minor seizures for four days in a row. AHR at p. 133. Dr. Vadlamudi recorded that Plaintiff was "doing ok now" and stated that the seizures were stress-related. *Id.* He again denied Plaintiff's request for a referral to a neurologist and directed Plaintiff to continue on Topamax. *Id.*; 2d Am. Compl. at ¶¶ 17-19.

On September 23, 2012, Plaintiff had a grand mal seizure. AHR at p. 232. Plaintiff, who was unconscious and unable to recall the events, claims that he was told that he walked from his bed to the bathroom and then fell striking his back on a toilet. *Id.*; Pl.'s Dep. at p. 59. Plaintiff was brought to the infirmary on a stretcher. AHR at p. 132. Plaintiff had a red, bruised area and trauma to his right temple, and complained of pain in his back, although the examining nurse noted no redness or swelling. *Id.* Plaintiff has a history of lower back pain. *Id.* Marcy staff arranged for Plaintiff to be sent to Faxton-St. Lukes Hospital that evening. *Id.* at pp. 132 & 240. At St. Lukes, a CAT scan and follow-up x-rays were taken that showed that Plaintiff had suffered an "acute compression fracture" of the T12 and L1 vertebra. *Id.* at pp. 230 & 236-37. The imaging also showed chronic spondylolisthesis at L5-S1. *Id.* at p. 232. Dr. Clifford Soults, who completed a neurosurgical consult, indicated that the fracture at T12 was "mild" and the L1 fracture was "slightly more pronounced." *Id.* at p. 232. Dr. Jamel Arastu, whom Plaintiff also saw for a neurology consultation, believed that this was a "breakthrough" seizure and recommended that Plaintiff's Topamax dosage be increased to 225mg, and possibly 250mg, twice daily. *Id.* at p. 235. When

Plaintiff was discharged on September 26, 2012, it was ordered that he would use a Thoracolumber Sacral Orthosis ("TLSO") back brace "at all times unless completely flat in bed." *Id.* at p. 230. Plaintiff was also to take pain medication as needed and to have follow-up x-rays. *Id.* at pp. 230-31. The day before Plaintiff was discharged, September 25, 2012, Marcy staff contacted St. Lukes and were told that Plaintiff did not require surgery, and should have Dilaudid, twice daily, for pain relief and use a back brace. *Id.* at p. 130.

Upon being discharged from St. Lukes on September 26, Plaintiff was admitted to Mid-State Correctional Facility infirmary, where he was provided with a back brace, was ambulatory, and had his Topamax increased to 225mg, twice daily. *Id.* at p. 129. Plaintiff did not complain of pain or further seizure activity while at Mid-State, and on September 28, 2012, Plaintiff returned to Marcy. *Id.* at p. 127. Plaintiff was issued a permit to use a TLSO brace, a cane, and to be assigned to a bottom bunk. *Id.* at p. 267. In addition to the back brace that he had received at Mid-State, Plaintiff was also provided with a cane and was assigned to a single bed. Pl.'s Dep. at pp. 22 & 26-27. On October 2, 2012, Dr. Zaki, a physician at Marcy, signed a permit for Plaintiff to use a wheelchair, cane, upper body brace, and to be assigned to a lower bunk. AHR at p. 126. Dr. Zaki also prescribed Motrin 600mg, twice daily. *Id.* at p. 127. Plaintiff received a wheelchair that same day. Pl.'s Dep. at p. 22. Dr. Vadlamudi saw Plaintiff on October 26, 2012, and recorded that Plaintiff was using the back brace and that there was no need for Ultram. AHR at p. 124.

On November 9, 2012, Plaintiff filed Grievance No. 1695-12, claiming that he was being deprived proper pain medication. Starlin Decl., Ex. B, ("Pl.'s CORC Appeals Records") at pp. 14-

15.[3] Plaintiff stated that the prescribed pain medication, Motrin, was ineffective and Dr. Vadlamudi had denied Plaintiff's requests for other pain medication. *Id.* at p. 15. The Inmate Grievance Resolution Committee ("IGRC") was deadlocked, but Plaintiff's appeals to the Superintendent of Marcy and the Central Office Review Commitee ("CORC") were denied. *Id.* at pp. 15, 17, & 19. On November 20, 2012, Plaintiff filed Grievance No. 16941-12, which complained that Dr. Vadlamudi had failed to properly treat his seizures. *Id.* at p. 54. Plaintiff asserted that timely intervention could have prevented the grand mal seizure he suffered on September 23. *Id.* The IGRC was deadlocked, but the Superintendent and CORC both denied Plaintiff's appeals. *Id.* at pp. 52-53.

On November 26, 2012, Plaintiff was evaluated for whether he had a continuing need for a wheel chair. *Id.* at p. 122. Nurse Coppola determined that there was no longer a medical need and issued a permit permitting Plaintiff to use a cane, upper body brace, and to be assigned to a lower bunk. *Id.* at p. 123. The permit was signed by Defendant Smith, Nurse Administrator at Marcy, who did not independently examine Plaintiff, but reviewed St. Lukes' discharge instructions and spoke to Nurse Coppola about her exam and evaluation of Plaintiff. Dkt. No. 57-7, Sandra Martin Smith Decl., dated Dec. 15, 2015, at ¶ 14. Smith states that part of the healing of a back fracture requires ambulating and strengthening the back muscles and that use of a wheelchair can impede that process. *Id.* The permit also switched the type of cane Plaintiff was allowed from a wooden cane to a quad cane. AHR at p. 123; Pl.'s Dep. at p. 23.

Plaintiff claims that Smith withdrew his wheelchair permit in retaliation for having filed grievances. 2d Am. Compl. at ¶ 14. Plaintiff claims that he was summoned to Smith's office and

---

[3] Plaintiff's CORC Appeals Records were filed separately with the Court. *See* Dkt. No. 58-1. Citations are to the pagination assigned by Defendants.

"chewed out" about his grievances and told that St. Lukes had never authorized the wheelchair. Pl.'s Dep. at pp. 24-25. Plaintiff asserts that Smith, more or less, told him that she was taking the wheelchair away because he had filed the Grievance, although he is unable to recall exactly what was said. *Id.* at p. 34. Plaintiff alleges that he had to walk significant distances across the facility to reach the mess hall and HIV awareness classes that he administered. *Id.* at p. 25; 2d Am. Compl. at ¶¶ 76-77.

Plaintiff saw Dr. Vadlamudi on November 27, 2012, and was referred to Dr. Soults for a follow-up on his back injury. AHR at p. 121. On November 29, 2012, Plaintiff was seen for his regular seizure tracking, was noted to be "doing ok," and was directed to continue taking Topamax 250mg, twice daily. *Id.* At the follow-up with Dr. Soults on December 8, 2012, Dr. Soults referred Plaintiff for further x-rays. *Id.* at p. 208. The x-rays were taken on January 10, 2013, and showed that Plaintiff's fractures were healing. *Id.* at p. 169. On December 7, 2012, Plaintiff filed Grievance No. 16961-12, requesting to see a neurologist and be put onto a different medication. Pl.'s CORC Appeals Records at p. 83. The IGRC was deadlocked, but the Superintendent and CORC both denied Plaintiff's appeals. *Id.* at p. 82.

On December 27, 2012, Plaintiff reported that he was feeling "seizurish," but denied having any seizures. AHR at p. 120. Plaintiff requested that his seizure medication be changed to Tegretol, which is an anticonvulsant. *Id.*; Vadlamudi Decl. at ¶ 29. Plaintiff also complained of back pain, but his ambulation was observed to be steady using the quad cane. AHR at p. 120. When Plaintiff was seen on January 22, 2013, he walked without difficulty and a steady gait. *Id.* Plaintiff reported seizure activity but was directed to continue on Topamax 250mg, twice daily. *Id.* At this time, Plaintiff was taking Ibuprofen 600mg, twice daily for his back pain. *Id.* On February 14, 2013,

Plaintiff again reported petit seizures and requested different medication. *Id.* at p. 119. Plaintiff also renewed his complaints of back pain at this appointment, and his next appointment, on February 28. *Id.* at pp. 118-19. Plaintiff claimed that the Ibuprofen was ineffective and requested different medication. *Id.* at p. 118.

At a March 7, 2013 follow-up, in response to Plaintiff's reports of continuing seizure activity, Dr. Vadlamudi prescribed Tegretol 100mg, twice daily, in addition to the Topamax. *Id.* at p. 117. Dr. Vadlamudi noted Plaintiff's continuing complaints of back pain, but did not change his medication and referred him for another follow-up with Dr. Soults. *Id.* Dr. Soults examined Plaintiff on March 25, 2013, and recorded that Plaintiff could begin physical therapy and discontinue using the brace. *Id.* at p. 202. On April 8, 2013, Dr. Vadlamudi referred Plaintiff for a physical therapy consult. *Id.* at p. 117. The physical therapy consult occurred on April 18, 2013, and it was recommended that Plaintiff attend physical therapy twice weekly, for four weeks. *Id.* at pp. 200-01. Plaintiff subsequently attended physical therapy sessions during which he completed a number of exercises to strengthen and stabilize his back. Defs.' SMF at ¶ 127.

On March 26, 2013, Plaintiff filed a fourth Grievance, No. 17145-13, requesting to see a back specialist and have an MRI. Pl.'s CORC Appeals Records at p. 97. The IGRC was deadlocked, but the Superintendent and CORC both denied Plaintiff's appeals. *Id.* at pp. 95-96.

On May 9, 2013, Plaintiff was seen at the Marcy infirmary and was observed to ambulate with a cane with a slow and steady gait. AHR at p. 115. Lab work continued to be conducted, monitoring the levels and effects of Topamax. Defs.' SMF at ¶ 129. On May 23, 2013, Plaintiff visited the infirmary stating that he had a seizure two weeks earlier. *Id.* at p. 113. Plaintiff also reported that he had stopped taking Tegretol two weeks earlier because it had caused a rash,

although the nurse did not observe a rash. *Id.* at p. 113. Plaintiff complained of back pain and requested different pain medication because the Ibuprofen was ineffective. *Id.*

Plaintiff commenced this action on July, 8, 2013. *See* Dkt. No. 1.

## II.  STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'"

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

## III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) Defendants are entitled to judgment as a matter of law on Plaintiff's claims; (2) Plaintiff failed to exhaust administrative remedies on his First Amendment and ADA and Rehabilitation Act claims; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's ADA and Rehabilitation Act claims are barred by sovereign immunity. Dkt. No. 57-13, Defs.' Mem. of Law.

### A. Deliberate Medical Indifference Claim Against Defendant Dr. Vadlamudi

Plaintiff asserts an Eighth Amendment deliberate medical indifference claim against Defendant Dr. Vadlamudi based on the treatment for Plaintiff's (1) seizure condition and (2) back injury. 2d Am. Compl.

### 1. Legal Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the

defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

## 2. Analysis

### a. Epilepsy

The specific grounds for Plaintiff's claim based on his seizure condition are that Dr. Vadlamudi refused to refer Plaintiff to a neurologist when Plaintiff reported seizure activity in June through August 2012, which resulted in Plaintiff suffering a grand mal seizure in September 2012. 2d Am. Compl. at ¶ 73. Plaintiff claims that his seizure activity in June through August indicated that his condition was not controlled by his medication and that a neurologist would have changed his medication. *Id.* Plaintiff also alleges that a neurologist could have implemented other courses of treatment to prevent his petit seizures from developing into a grand mal seizure. *Id.* For example, Plaintiff claims that a timely administered shot of Ativan may prevent a grand mal seizure as it

develops.  Pl.'s Dep. at p. 62.

### i. Objective Standard

From his arrival at Marcy in November 2011, Plaintiff received on-going treatment for his seizure condition.  Plaintiff's seizure condition had been treated with Topamax since 2009, and Plaintiff continued to take Topamax 200mg, twice daily at Marcy.  AHR at p. 236.  Plaintiff's last seizure, before he arrived at Marcy, occurred on August 11, 2011.  *Id.* at p. 138.  Plaintiff was regularly seen by Dr. Vadlamudi and other Marcy staff for monitoring of his seizure condition.  *Id.* at pp. 110-43.  Plaintiff also had regular lab work done to monitor the levels and effects of Topamax. Vadlamudi Decl. at ¶ 8.

Thus, this is not a case where Plaintiff was wholly denied medical treatment, but rather one where Plaintiff was receiving an on-going course of treatment and was denied a requested change in treatment.  The Court's objective inquiry therefore focuses on whether the treatment Plaintiff was denied—a referral to a neurologist and a change of medication—was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d at 279; *Smith v. Carpenter*, 316 F.3d at 185 ("'[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes.").  "[T]he severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances."  *Smith v. Carpenter*, 316 F.3d at 187.  "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  *Id.*

Construing the evidence in the light most favorable to Plaintiff, the Court finds that the

refusal to refer Plaintiff to a neurologist created a sufficiently serious risk of harm. A seizure condition is a serious medical condition and a failure to respond to an inmate's complaints regarding the possible onset of a seizure may constitute a sufficiently serious deprivation of medical care. *See Youngblood v. Artus*, 2011 WL 6337774, at *8 (N.D.N.Y. Dec. 19, 2011); *see also Boomer v. Lanigan*, 2002 WL 31413804, at *7 (S.D.N.Y. Oct. 25, 2002) ("Ignoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs, particularly when it is undisputed that the inmate suffered a seizure after those requests."). Here, Plaintiff claims that the minor seizure activity he experienced in July through August 2012 indicated that his condition was not controlled by his medication and that he was at risk of suffering a grand mal seizure. Pl.'s Dep. at pp. 73-74. Plaintiff informed Dr. Vadlamudi, but his request to see a neurologist was denied. *Id.* at pp. 58 & 74. Plaintiff then suffered a grand mal seizure in September 2012, which caused him to fracture his back. Plaintiff's doctors found this incident a significant episode in Plaintiff's condition. Dr. Arastu, whom Plaintiff saw at St. Lukes, opined that "this was clearly a breakthrough seizure." AHR at p. 230. Plaintiff's Topamax levels were increased following this seizure. Vadlamudi Decl. at ¶ 17. Based on the record, a reasonable fact- finder could find that the failure to respond to Plaintiff's complaints that his seizure condition was not well-controlled exposed Plaintiff to a significant risk of serious harm.

### ii. Subjective Standard

Plaintiff must also show that Defendant Dr. Vadlamudi acted with a mental state akin to criminal recklessness in refusing to refer him to a neurologist. *See Farmer v. Brennan*, 511 U.S. at 836-37. Here, the extensive treatment provided by Dr. Vadlamudi and Marcy staff to Plaintiff for his seizure condition does not support a finding of deliberate indifference.

As stated above, Plaintiff received an on-going course of treatment for his seizure condition at Marcy. Plaintiff continued on the medication with which his seizures had been treated since 2009 and the effects and level of that medication were monitored by regular lab work. AHR at p. 236; Vadlamudi Decl. at ¶ 8. Plaintiff was also seen for regular follow-ups at the infirmary to track his seizures. *See* AHR at pp. 121-22, 129, 133, 135, & 138. At appointments in June, July, and August 2012, Plaintiff complained of minor seizures and requested a referral to a neurologist. *Id.* at pp. 133 & 135. However, Dr. Vadlamudi determined that a referral to a neurologist was not then indicated and that Plaintiff's seizures were controlled on Topamax 200mg, twice daily. Vadlamudi Decl. at ¶ 11. On August 3, Dr. Vadlamudi noted that while Plaintiff had a series of "minor attacks," he was then "doing ok" and the seizures were stress related. AHR at p. 133. At the time of these appointments, Plaintiff's last previous seizure had been August 2011. *Id.* at p. 135. Plaintiff had also had a CAT scan on September 10, 2011, which was negative. *Id.*

Plaintiff's claim against Dr. Vadlamudi evidences disagreement with his medical judgment, which does not amount to deliberate indifference. Dr. Vadlamudi determined that referral to a neurologist was not required because any seizure activity Plaintiff was then experiencing was minor and stress related, and Plaintiff's condition was controlled on Topamax. AHR at p. 135. This was a medical judgment and Plaintiff's claim is, in essence, that that judgment was incorrect. "Disagreements over medications, diagnostic techniques, forms of treatment, the need of specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) (citing *Sonds v. St. Baranabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). Therefore, Plaintiff's disagreement with Dr. Vadlamudi's judgment that his condition was controlled is insufficient to establish

deliberate indifference.

Furthermore, even crediting Plaintiff's assertion that referral to a neurologist and a change in medication might have prevented the grand mal seizure, Plaintiff has not produced any evidence to suggest anything more than negligence. Dr. Vadlamudi's determination that Topamax continued to be indicated for Plaintiff's condition in spite of minor seizure activity in June, July, and August 2012 was consistent with previous and subsequent treatment of Plaintiff's condition. Plaintiff has had seizure activity on other medications and while Plaintiff's medication has been adjusted or changed on several occasions, Pl.'s Dep. at pp. 51-52, the failure to do so at this time does not evidence a "conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d at 702.

Accordingly, the Court recommends that Defendants be **GRANTED** summary judgment on Plaintiff's deliberate indifference claim based on his seizure condition.

### b. Back Injury

The basis of Plaintiff's deliberate indifference claim based on his back injury is that Dr. Vadlamudi did not provide effective pain medication and did not follow the recommendations of Plaintiff's outside specialist, which Plaintiff alleges included surgery and an MRI. *See* 2d Am. Compl. at ¶¶ 41, 52, & 93.

Here, as to the objective prong, Plaintiff has not shown that an issue of fact exists regarding a deprivation of adequate medical care with respect to his back injury. Immediately following the injury, Plaintiff was sent to St. Lukes where a CAT scan and x-rays were taken. AHR at pp. 230-37. At Marcy, Plaintiff was frequently seen in the infirmary and by Dr. Vadlamudi regarding the injury and progress notes were kept on Plaintiff's ambulation. *Id.* at pp. 115-22, 124, & 127. Throughout

his recovery, Plaintiff used a back brace and cane, and also used a wheelchair, until it was no longer necessary. *Id.* at pp. 123, 126, & 267. For pain relief, Plaintiff was prescribed Ibuprofen 600mg, twice daily. *Id.* at pp. 113-20 & 124. Plaintiff was referred twice to Dr. Soults, a neurosurgical specialist whom Plaintiff saw at St. Lukes. *Id.* at pp. 202-03 & 208-09. In January 2013, another set of x-rays were taken that showed that Plaintiff's fractures were healing. *Id.* at p. 169. In May 2013, Plaintiff began attending physical therapy. *Id.* at pp. 190-97.

Plaintiff's claims that Dr. Vadlamudi ignored his specialist's recommendations are unsupported by the record. Surgery was not recommended upon Plaintiff's discharge from St. Lukes, nor did Dr. Soults in subsequent follow-ups indicate that surgery was appropriate. *See id.* at pp. 130, 202-03, & 208-09. The records also do not indicate that Dr. Soults ordered an MRI. *See id.* at pp. 202-03 & 208-09. As to Plaintiff's claim that he was denied adequate pain medication, Plaintiff was provided with Ibuprofen 600mg, twice daily, which Dr. Vadlamudi determined was proper for Plaintiff's injury. Vadlamudi Decl. at ¶¶ 29 & 33. While Plaintiff claims that Ibuprofen was ineffective at treating his pain, he also states that many pain medications cause him to have seizures and he has to be "very careful" what he takes. Pl.'s Dep. at p. 80.

Moreover, even if Dr. Vadlamudi's prescription of a weaker pain medication constituted a denial of adequate care, it is insufficient to establish deliberate indifference at the subjective prong. "Differences in opinion between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs." *Wright v. Genovese*, 694 F. Supp. 2d at 160; *see also Vail v. Lashway*, 2014 WL 4626490, at *14 (N.D.N.Y. Sept. 15, 2014) ("[T]he decision to choose one form of pain medication over another, even if the medication causes side effects, is not indicative of deliberate

indifference."); *Scott v. Perio*, 2005 WL 711884, at *6 (W.D.N.Y. Mar. 25, 2005) ("It is not for the Court to second guess plaintiff's medical providers as to what medicine or what dosage should have been prescribed to treat the plaintiff."). Therefore, Dr. Vadlamudi's decision to prescribe Plaintiff Ibuprofen rather than a stronger pain medication does not evidence deliberate indifference.

Accordingly, the Court recommends that summary judgment be **GRANTED** with respect to Plaintiff's deliberate indifference claims based on his back injury.

### B. Failure to Exhaust

Defendants next argue that Plaintiff failed to exhaust administrative remedies on his First Amendment retaliation claim against Defendant Smith and his ADA and Rehabilitation Act claims against Defendant Marcy. Defs.' Mem. of Law at pp. 26-30.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, ___ S. Ct. ___, 2016 WL 3128839, at *5 (2106) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). The defendant bears the burden of proving that the administrative remedies available to Plaintiff were not exhausted prior to the initiation of this civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28,

-20-

1999).[4]

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In this case, there is no record at Marcy of a grievance filed by Plaintiff relative to retaliation by Smith or disability discrimination by Marcy. Dkt. No. 57-10, Erin Pfendler Decl., dated Dec. 17, 2015, at ¶¶ 7-8. Furthermore, Plaintiff never appealed any grievance to CORC regarding such claims. Dkt. No. 57-11, Jeffery Hale Decl., dated Oct. 8, 2015, at ¶ 12. The Court has reviewed the four grievances[5] Plaintiff appealed to CORC with respect to the events that are the subject of this action and finds that Plaintiff did not exhaust administrative remedies on his retaliation and disability discrimination claims prior to bringing this action. *See* Pl.'s CORC Appeals Records.

---

[4] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendants properly raised the defense in their Answer. *See* Dkt. No. 50, Answer at ¶ 50.

[5] Plaintiff only exhausted administrative remedies on a fifth grievance, MCY-17569-13, after he commenced this action. Hale Decl., Ex. A.

Plaintiff's obligation to exhaust administrative remedies may be nonetheless be excused if remedies were unavailable. *Ross v. Blake*, __ S. Ct. __, 2016 WL 3128839, at *7 (2016). As the Supreme Court recently clarified, administrative remedies may be unavailable in three potential circumstances: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at *7-8.[6]

In this case, there is no evidence that administrative remedies were unavailable to Plaintiff. It is undisputed that there was a grievance program in place at Marcy, of which all inmates were informed at orientation. Pfendler Decl. at ¶ 2. Plaintiff does not claim that he was unaware of Marcy's grievance procedures, and filed at least five grievances while he was at the facility. *See* Hale Decl., Ex. A. Plaintiff alleges an incident where he was "chewed out" and retaliated against by Defendant Smith for filing grievances. Pl.'s Dep. at pp. 24 & 33-35. Intimidation and threats may render administrative remedies unavailable where they would deter a prisoner of "ordinary fitness" from filing a grievance. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). However, Plaintiff does not allege that Smith threatened him with retaliation if he filed further grievances or that this incident deterred him from continuing to file grievances. Indeed, Plaintiff filed at least

---

[6] The Second Circuit previously set forth three circumstances when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). The Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, __ F.3d __, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016). The Court therefore will analyze whether administrative remedies were available to Plaintiff.

three grievances after the alleged retaliation incident. *See* Hale Decl., Ex. A. Furthermore, Plaintiff's allegation that Smith retaliated against him is unsupported and conclusory. *See* Pl.'s Dep. at pp. 33-35. Thus, Plaintiff has not shown an issue of fact that Smith's statements inhibited him from filing grievances such that administrative remedies were unavailable to him. *See Snyder v. Whittier*, 428 F. App'x 89, 92 (2d Cir. 2011).

Accordingly, the Court recommends that summary judgment be **GRANTED** as to Plaintiff's retaliation and disability discrimination claims due to his failure to exhaust administrative remedies.[7]

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 57) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

---

[7] The Court therefore does not reach Defendants' arguments that Plaintiff's retaliation and disability discrimination claims are unsupported by the record, that Defendants are entitled to qualified immunity, and that Plaintiff's disability discrimination claims are barred by sovereign immunity.

Date:   August 9, 2016
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge